UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ELIZABETH ARNOLD,

                          Plaintiff,

                                                      Case # 17-CV-1260

v.

                                                       DECISION AND ORDER

INDEPENDENT HEALTH CORP. et al.,

                          Defendants.

## INTRODUCTION

Plaintiff Elizabeth Arnold, proceeding *pro se*, brings this action pursuant to Title VII of the Civil Rights Act of 1964 for employment discrimination based on gender, national origin, and race. ECF No. 1. Plaintiff, a Caucasian female from the United States, alleges that she applied for various information technology positions with Defendant Independent Health Association, Inc. (incorrectly sued as Independent Health Corp, Independent Health Assoc., Inc. and Subsidiary Reliance Rx) from October 2016 through October 2017, but was not hired because of her race, gender, and national origin. *Id.* ¶ 14.

Presently before the Court is IHA's Motion for Summary Judgment. ECF No. 57. For the reasons that follow, IHA's Motion is GRANTED.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable

to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). However, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted); *see also Saji v. Nassau Univ. Med. Ctr.*, 724 F. App'x 11, 13-14 (2d Cir. 2018) (summary order) (applying same standard to summary judgment motion in case of failure to hire due to national origin).

## BACKGROUND

Plaintiff submitted several applications to IHA for various information technology positions between October 2016 and October 2017.[1] IHA interviewed Plaintiff for only one position but declined to hire her for any of the positions. The Court turns to each of these applications.

### 1. Application Solution Architect – October 2016

In October 2016, Plaintiff submitted an electronic application—consisting only of her resume—for the Solution Architect position. ECF No. 58 ¶¶ 18, 20. Plaintiff's resume did not contain any information regarding Plaintiff's race or national origin. *Id.* ¶ 26.

The posting required that applicants satisfy all of the listed "Qualifications," including, as relevant here, at least five years of experience in "building, designing, purchasing and integrating systems." *Id.* ¶¶ 19, 22. However, according to IHA, Plaintiff's resume did not demonstrate that

---

[1] The parties reference several applications Plaintiff submitted in 2018—one for Senior Application Developer in January 2018 and three for Solution Architect in January and February 2018—however, these applications were submitted *after* Plaintiff filed her complaint. The complaint was never amended to include these applications and, therefore, the Court declines to discuss them. *Gilette Co. v. Philips Oral Healthcare, Inc.*, No. 99CIV0807, 2001 WL 1442637, at *8 (S.D.N.Y. Nov. 15, 2001) (noting that arguments that post-date the filing of the complaint are not within scope of the complaint). In any event, there is no evidence in the record that would support Plaintiff's discrimination claims related to these applications. Plaintiff has not shown that IHA knew of Plaintiff's race or national origin, and IHA hired someone of Plaintiff's race and national origin for one position and hired no one for the remaining positions. *Id.* ¶¶ 128, 134, 159. And any claim related to alleged gender discrimination is unexhausted as discussed below.

2

she met the requisite qualifications for the position. For example, Plaintiff's resume did not show that she had any experience with business or integration technologies or methodology-based development, and it did not reflect an understanding of "design principles, application architecture, enterprise architecture, any experience writing or facilitating request for information proposals, or any experience utilizing operating systems." *Id.* ¶¶ 23-24.

IHA hired Nancy Anastasia—a Caucasian female whose national origin is the United States, and who was already an employee of IHA—for the Solution Architect position. *Id.* ¶¶ 28-30. According to IHA, Ms. Anastasia was hired for the position based on her experience and known qualifications—which met the position's requirements—before external candidates were considered. *Id.* ¶¶ 31-33.

**2.      Senior Application Developer – November 2016**

In November 2016, Plaintiff electronically submitted her resume for the Application Developer-Senior position. *Id.* ¶ 56. IHA posted this position as a "green card recruitment," which was part of a United States Department of Labor certification and green card application process for an existing employee of IHA, Naga Cheruvu. *Id.* ¶¶ 50-52. Plaintiff's resume did not disclose her race or national origin. *Id.* ¶ 58.

IHA sponsors green card applications for some of its foreign-born employees. As part of the green card application, the sponsoring employer—IHA—is required to submit a labor certification to the Department of Labor. *Id.* ¶ 38. The certification typically requires the sponsoring employer to conduct a labor market survey by recruiting to determine if there are able, willing, available, and qualified United States nationals for the position. *Id.* ¶ 39. However, such a survey is not a solicitation to immediately hire any United States national who submits an application as part of the process and an employer is not required to hire a United States worker

3

who is able, willing, available, and qualified for the position. *Id.* ¶¶ 40-43. Nor is the employer required to terminate the employment of a foreign national if a United States national who is able, willing, available, and qualified applies. *Id.* ¶ 44. Rather, receipt of an application from such a United States national only means that the labor certification and green card application process cannot proceed; it does not affect the foreign national's current work visa or work status. *Id.* ¶ 47.

IHA conducted a labor market survey for the Senior Application Developer position while intending to retain Mr. Cheruvu. As part of that process, IHA interviewed Plaintiff. First, recruiter Gregory Johnson conducted a pre-interview screening, but Mr. Johnson was unable to determine if Plaintiff was qualified for the position. *Id.* ¶¶ 60-61. On February 1, 2017, Plaintiff was interviewed over the telephone by Christopher Maraszek (Director of IT Application Services), James Matthew Watson (then-Manager of the IT Integration Team), and Mr. Johnson. *Id.* ¶ 62. At no time during the telephonic interview did the interviewers ask about Plaintiff's national origin or race nor did Plaintiff offer such information. *Id.* ¶ 66.

The interviewers determined that Plaintiff was unqualified for the position. Mr. Watson found that Plaintiff could not demonstrate familiarity with or comprehension of basic programming concepts, nor could she demonstrate the tools and skills she mentioned in her resume. *Id.* ¶¶ 71, 73. Instead, she used "techno-babble"—words and phrases that sounded technical but were strung together nonsensically. *Id.* ¶ 70. Mr. Maraszek took contemporaneous notes during the interview. He noted, with respect to certain programs and services that it "[s]ounded like she has seen it but not anything other than naming it." *Id.* ¶ 77. According to those notes, Plaintiff had "[n]o experience" in several critical areas. *Id.* ¶¶ 78-80. Plaintiff's answers to the interviewers' questions betrayed her lack of competence in numerous critical programs and tools. *Id.* ¶ 81. Mr. Maraszek repeatedly noted that Plaintiff's answers were a

4

"[s]wing and a miss," or that they were "[j]ust a barrage of words." *Id.* Once, Mr. Maraszek noted that Plaintiff's response was "[n]ot even a swing" and that she did "not even [make] an attempt to answer the question." *Id.* ¶ 82. Mr. Maraszek's notes reflect that Plaintiff did not have a reasonable understanding of the topics discussed and that she did not have the requisite training or experience. *Id.* ¶¶ 83-85. Mr. Watson and Mr. Maraszek concluded that Plaintiff was not qualified for the Senior Application Developer position. *Id.* ¶ 87. In fact, the interview was so bad that Mr. Watson and Mr. Maraszek concluded that Plaintiff did not have the requisite qualifications, experience, knowledge, or skills for *any* information technology position at IHA. *Id.* ¶ 88.

### 3. Business Intelligence Architect – February 2017

In February 2017, Plaintiff electronically submitted her resume for the Business Intelligence Architect position. *Id.* ¶ 92. Again, Plaintiff's resume did not disclose her race or national origin. *Id.* ¶ 93. The job description required an undergraduate degree in "information technology," however, Plaintiff's resume only specified that Plaintiff had "[c]oncentrations in business and sciences." *Id.* ¶ 98. In addition, as with the Senior Application Developer position, Plaintiff's resume did not demonstrate the requisite "[f]ive (5) years of experience" in critical areas. *Id.* ¶ 100. Accordingly, IHA concluded that Plaintiff did not meet the educational or experiential requirements for the Business Intelligence Architect position. Instead, IHA hired Michelle Valvo, a Caucasian female from the United States who met all of the necessary qualifications. *Id.* ¶¶ 102-04.

### 4. Application Solution Architect – October 2017

Plaintiff submitted a second application for the position of Solution Architect in October 2017. *Id.* ¶ 106. Again, Plaintiff submitted only her resume, which did not reveal any information about Plaintiff's race or national origin. *Id.* ¶ 112. This time, Plaintiff's resume included different

5

descriptions of her past positions, but revealed no additional experience qualifying her for the position. *Id.* ¶ 107. IHA determined that Plaintiff was unqualified for the position and hired Paul Bagar, a white male from the United States, who had decades of experience in system development and design and was "one of the most experienced technical architects" at IHA. *Id.* ¶¶ 116-20.

5. **Senior SAS Solution Programmer – October 2017**

In October 2017, Plaintiff electronically submitted her resume for the position of SAS Solution Programmer-Senior. *Id.* ¶ 140. As with her other applications, Plaintiff's resume does not contain any information identifying her race or national origin. *Id.* ¶ 142. Again, Plaintiff's resume did not demonstrate that she had the required five years of experience for the position or an undergraduate degree in "Informatics, computer information systems, or related area." *Id.* ¶¶ 145-46. At her deposition, Plaintiff agreed to voluntarily withdraw her claim for this position because she agreed that she did not meet the qualifications. *Id.* ¶ 149. In her response, Plaintiff attempts to reverse her withdrawal. ECF No. 64 at 25.

6. **Data & Reporting Analyst – November 2017**

In November 2017, Plaintiff submitted her resume for the Data Reporting Analyst position. However, the positing was withdrawn and rescinded and no one was ever hired for the position. ECF No. 58 ¶¶ 152-53.

## DISCUSSION

I. **Administrative Exhaustion**

The Court first addresses administrative exhaustion. Plaintiff filed a complaint with the New York State Division of Human Rights on February 8, 2017, alleging discrimination based on race and national origin with respect to the applications for employment she submitted to IHA in October and November 2016. ECF No. 58-5. IHA argues that Plaintiff failed to administratively

exhaust her claims with respect to gender and any employment application filed after November 2016. The Court agrees with the first argument but disagrees with the second.

"The failure to first present a claim to the EEOC or a state administrative agency may result in dismissal where the new claim is not reasonably related to the charge before the administrative agency." *Danials-Kirisits v. New York State Office of Court Admin.*, No. 05-cv-800S, 2013 WL 1755663, at *3 (W.D.N.Y. Apr. 24, 2013). However, "incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge," a previously unraised claim that falls within the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination," and a charge of retaliation for the filing of the EEOC complaint, are exceptions to the exhaustion requirement. *Murray v. Bd. of Educ. of City of New York*, 984 F. Supp. 169, 175-76 (S.D.N.Y. 1997) (quoting other sources).

To be sure, Plaintiff's Division of Human Rights complaint does not identify discrimination based on "gender," as she alleged in the Complaint before the Court. Plaintiff argues that this is because the Division of Human Rights complaint does not contain a place for her to allege such discrimination. While "gender" does not appear as a choice, "sex" does. In addition, Plaintiff could have specified "other" discrimination. Plaintiff did not check either box. Even more importantly, Plaintiff never mentioned any instance of sex or gender discrimination in her narrative summary of the alleged discrimination. Therefore, Plaintiff has failed to exhaust her administrative remedies with respect to gender discrimination.

However, Plaintiff's claims regarding employment applications she submitted after November 2016—when she filed the Division of Human Rights complaint—but before December 2017—when she filed the instant action—fall within an exhaustion exception to the extent they allege race and national origin discrimination. Although each of those employment applications

7

were filed *after* Plaintiff's Division of Human Rights complaint, Plaintiff alleges that these incidents of discrimination were carried out in precisely the same manner as alleged in the Division of Human Rights complaint. Therefore, they are not barred.

**II.     *McDonnell Douglas* Burden Shifting Framework**

IHA's Motion for Summary Judgment is analyzed under the *McDonnell Douglas* burden-shifting framework. *Ruszkowski v. Kaleida Health Sys.*, 422 F. App'x 58, 60 (2d Cir. 2011) (summary order) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (applying framework to motion for summary judgment in Title VII failure to hire case)). Under this framework, a plaintiff must first establish a prima facie case of discrimination. *Id.* The plaintiff's burden of proof at the prima facie stage is "*de minimis.*" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).

Once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its failure to hire. *See McDonnell*, 411 U.S. at 802. In other words, "the defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (internal quotation marks omitted).

Upon the defendant's proffer of a legitimate, nondiscriminatory reason for its employment action, "the presumption of discrimination arising with the establishment of the prima facie case drops from the picture" and the plaintiff must then establish that the defendant's proffered reason is a mere pretext for actual discrimination. *Weinstock*, 224 F.3d at 42 (citing *St. Mary's*, 509 U.S. at 510-11).

### III. Prima Facie Case of Discrimination

Under Title VII of the Civil Rights Act of 1964, it is "an unlawful employment practice for an employer . . . to fail or refuse to hire . . . any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a).

To establish IHA failed to hire her based on gender, race, and national origin, Plaintiff must show (1) she is a member of a protected class; (2) she was qualified for the position for which she applied; (3) she was denied the position; and (4) the denial occurred under circumstances giving rise to an inference of discrimination. *Ruszkowski*, 422 F. App'x at 60. As set forth below, Plaintiff has failed to establish a *prima facie* case regarding any of the positions for which she applied.[2] Accordingly, the Court declines to address the remaining portions of the burden shifting analysis.

#### A. Senior Application Developer (November 2016) & Data Reporting Analyst (November 2017)

Plaintiff fails to establish a *prima facie* claim with respect to the Senior Application Developer and Data Reporting Analyst positions because, although Plaintiff applied for both jobs, the positions were not available. "[T]o sustain a claim for failure to hire, a plaintiff must allege that she applied for an *available* position for which she was qualified and was rejected under circumstances giving rise to an inference of unlawful discrimination." *Wang v. Phoenix Satellite Television US, Inc.*, 976 F. Supp. 2d 527, 537 (S.D.N.Y. 2013) (emphasis added). There is no question that the Senior Application Developer position was not an available position, because

---

[2] Although it need not address the issue because Plaintiff is unable to establish a *prima facie* case with respect to the other prongs, Plaintiff was not qualified for the positions for which she applied. IHA repeatedly determined that Plaintiff did not have the requisite experience or skills for positions at IHA. ECF No. 58 ¶ 88. Plaintiff has not submitted any evidence to suggest that she was qualified for these positions aside from her own belief. That is not enough to survive a motion for summary judgment. *Ellis v. Century 21 Dep't Stores*, 975 F. Supp. 2d 244, 267 (E.D.N.Y. 2013) ("Eligibility requirements are defined by the employer, and a plaintiff's subjective belief that she is qualified for the position is not sufficient.").

9

IHA never intended to hire any outside candidate. Rather, as explained above, the recruiting for that position was part of a labor market survey in support of a green card application. Additionally, IHA withdrew the Data Reporting Analyst posting after Plaintiff applied and never hired anyone for that position. Therefore, there is no genuine dispute that either position was "available." *United States v. City of New York*, 631 F. Supp. 2d 419, 429 (S.D.N.Y. 2009) (granting summary judgment in part to employer because employer never filled position for which plaintiff applied).

### B. Solution Architect (October 2016), Business Intelligence Architect (February 2017), and Application Solution Architect (October 2017)

With respect to the Solution Architect, Business Intelligence Architect, and Application Solution Architect positions, Plaintiff fails to provide any evidence supporting the fourth element of a *prima facie* case: that IHA's rejection of Plaintiff for the positions for which she applied occurred under circumstances giving rise to an inference of discrimination.

First, Plaintiff has not set forth any evidence that IHA knew of Plaintiff's protected status, *i.e.*, her race or national origin. "When an issue arises with respect to an employer's knowledge as to any protected status, courts require the plaintiff to adduce some evidence of knowledge to support an inference of intentional discrimination at the *prima facie* stage." *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 80 n.11 (2d Cir. 2005). Plaintiff has not set forth any such evidence. Instead, in support of its motion for summary judgment, IHA provided the resumes Plaintiff submitted to IHA and affidavits from IHA employees indicating that Plaintiff's resume did not contain any information regarding Plaintiff's race or national origin. ECF No. 58 ¶¶ 26 (regarding resume for Solution Architect position), 57-58 (regarding Senior Application Developer position[3]), 94 (regarding Business Intelligence Architect position), 112 (regarding Application Solution

---

[3] Although this position was not available, as explained above, Plaintiff was interviewed for this position by phone as part of the labor market study. ECF No. 58 ¶ 62. Consequently, IHA hiring managers never actually saw Plaintiff and she was never again interviewed for any position.

Architect position), 142 (regarding Senior SAS Solution Programmer position). Because there is no dispute of fact that IHA did not know Plaintiff's race or national origin—which Plaintiff claims IHA used to discriminate against her—summary judgment is warranted. *Woodman*, 411 F.3d at 81 (holding, in age discrimination case, that allegations of defendant's knowledge of a protected ground must be supported by evidence to avoid summary judgment); *see McDowell v. T-Mobile USA, Inc.*, 307 F. App'x 531, 533 (2d Cir. 2009) ("Despite extensive document discovery and depositions, plaintiff has failed to come forward with any evidence that Zaring knew plaintiff's race or was not the critical decision-maker.").

Summary judgment is warranted for a second reason: the individuals IHA hired for the jobs at issue are all members of the same protected groups as Plaintiff—white and from the United States. An inference against discrimination is appropriate when the individual hired to replace the plaintiff alleging discrimination is within the same protected class as plaintiff. *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 117 (2d Cir. 2010) (affirming summary judgment in favor of defendant employer and finding no inference of discrimination where an African American female plaintiff who alleged termination based on race was replaced by another African American female); *Rodriguez v. N.Y.C. Health & Hosps. Corp.*, No. 14-CV-4960, 2015 WL 5229850, at *5 (E.D.N.Y. Sept. 8, 2015) ("It is extremely difficult, if not practically impossible to establish discrimination where, as here, plaintiff was passed over so an employer can hire another member of plaintiff's same protected class." (internal quotation marks and citation omitted)). "The inference is not dispositive, but plaintiff must overcome it in order to establish an inference of discrimination." *Meyer v. McDonald*, 241 F. Supp. 3d 379, 390-91 (E.D.N.Y. 2017), *aff'd sub nom. Meyer v. Shulkin*, 722 F. App'x 26 (2d Cir. 2018).

Plaintiff has not overcome the inference against discrimination here. IHA hired a white woman from the United States—Nancy Anastasia—for the Solution Architect position. ECF No. 58 ¶¶ 28-30. It hired a white woman from the United States—Michelle Valvo—for the Business Intelligence Architect position. *Id.* ¶¶ 102-04. And it hired a white man from the United States—Paul Bagar—for the Application Solution Architect position. *Id.* ¶¶ 116-19. All of these applicants were more experienced than Plaintiff. Plaintiff has not submitted *any* evidence suggesting that IHA discriminated against her based on her national origin or race when they rejected her applications. Rather, Plaintiff maintains that IHA hired some unidentified, mysterious "Indian male" for these positions. The evidence belies this unsupported conjecture. Accordingly, there is no genuine dispute that the circumstances giving rise to an inference of discrimination.

C. **Senior SAS Solution Programmer (October 2017)**

Finally, Plaintiff has failed to establish a *prima facie* case with respect to her application for Senior SAS Solution Programmer in October 2017 because Plaintiff admitted during her deposition that she was not qualified for the position and she agreed to withdraw the claim.[4]

During her deposition, Plaintiff was asked, "So between Exhibit Number 8, your resume for the SAS position, and the SAS job description, you would agree that you probably don't meet those qualifications?" ECF No. 58-1 at 233. Plaintiff replied, "Yeah, this specific job description, yes." *Id.* Later, Plaintiff was asked, "So are you willing to agree that the SAS position—that you weren't subjected to employment discrimination with regard to the SAS job?" *Id.* at 236. Plaintiff replied, "Yes." Counsel then clarified, "Yes?" and Plaintiff responded, "I agree with you." *Id.* Counsel pushed yet again, "So you're withdrawing your claim of discrimination regarding that job, as well?" Plaintiff confirmed, "This specific, yes." *Id.*

---

[4] As with the other positions, it is also clear from the evidence that IHA was not aware of Plaintiff's race or national origin with respect to this position. ECF No. 58 ¶ 142.

12

In her response to the Motion for Summary Judgment, Plaintiff argues that she "does not consent to having this claim dismissed." ECF No. 64 at 25. But her admission during her deposition was more than just a consent to withdraw a specific claim; she admitted on the record that she was not qualified for the position and did not suffer discrimination. Absent admissible facts to the contrary—which she has not provided—Plaintiff's admission defeats her claim with respect to the Senior SAS Solution Programmer position. *See Robles v. Cox & Co.*, 987 F. Supp. 2d 199, 208 (E.D.N.Y. 2013) ("In addition, the Plaintiff has offered no evidence that she was ever discriminated against based on her age. In fact, she even admitted during her deposition that she never experienced any kind of discrimination while she was employed by the Defendant and working in the stockroom.").

## CONCLUSION

For the foregoing reasons, IHA's Motion for Summary Judgment, ECF No. 57, is GRANTED. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: June 30, 2021
      Rochester, New York

                                      HON. FRANK P. GERACI, JR.
                                      Chief Judge
                                        United States District Court